[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for malpractice for a dental extraction brought by the plaintiff, Gaetana Mary Keans, against the defendant, Dr. Paul Bocciarelli, a dental oral surgeon.
According to the plaintiff's complaint, the plaintiff employed the defendant to treat her professionally for a tooth extraction on June 19, 1990.
The plaintiff gave the defendant a detailed medical history including the fact that she suffered from myelofibrosis and was also taking a drug known as interferon.
The defendant extracted the diseased tooth but failed to consult with the plaintiff's treating medical doctor before performing the extraction.
After the plaintiff returned home the same day, her site of the extraction commenced to bleed and she developed a fever. The defendant was called by telephone on the same control the bleeding.
The next morning, after consulting with her medical doctor, she was hospitalized for three days suffering from severe bleeding, severe anemia, thrombocytopenia, vomiting and chills.
The plaintiff alleges that the defendant did not exercise the degree of care or skill ordinarily exercised by oral surgeons in the State of Connecticut in that:
1) the defendant failed to consult with the plaintiff's medical doctor before attempting the extraction, CT Page 10736
2) the defendant did not provide a platelet transfusion prior to said dental extraction, and
3) the defendant did not provide prophylactic antibiotic therapy prior to said extraction.
Accompanying the complaint was a good faith certificate signed by the plaintiff's attorney as required by Connecticut General Statutes 52-190a. Subsequent to that date, was a letter from Dr. Stephen A. Sachs, plaintiff's expert witness, dated November 6, 1990 which stated in part, as follows:
 "I do feel that a prudent practitioner would have either contacted the physician or have been familiar enough with the disorder to understand that special arrangements would need to be made. . . . It seems that there has been a significant variation from standard practice on this case."
The defendant, in his answer dated October 22, 1991, basically denies the allegation of malpractice and files special defenses as follows:
1. The plaintiff failed to follow the course of treatment prescribed by the defendant in that she did not take the penicillin prescribed by the defendant postoperatively.
2. The plaintiff failed to follow instructions set forth in a booklet "Care of Mouth After Oral Surgery" given to her by the defendant.
3. Plaintiff failed to contact the defendant and seek further treatment from him when her condition worsened.
The defendant also claims that if the plaintiff is found to have suffered damage, that award should be diminished by her own negligence, Conn. Gen. Stat. 52-572(h) and further that the plaintiff's claim is barred by the operation of Conn. Gen. Stat. 52-190a.
During the course of the trial testimony revealed CT Page 10737 that the plaintiff had been suffering myelofibrosis, a blood disorder, since 1977. Because of this problem the plaintiff received packed red blood transfusions once every two weeks but was not transfusion dependent for platelets.
The plaintiff had informed the defendant prior to the extraction that her platelet count was 39,000. Subsequent to the extraction the defendant kept the plaintiff in his recovery room to make sure the bleeding had stopped. In fact, the bleeding did stop, a clot had formed and the site was packed with gauze.
Prior to leaving the defendant's office the plaintiff was given a prescription for penicillin for post operative instructions and gauze. The plaintiff freely admits that she did not fill her prescription nor did she take any medication thereafter prior to her hospitalization.
Upon her return home, the plaintiff's condition worsened, the bleeding resumed and the plaintiff's son contacted the defendant who advised the plaintiff to bite on a tea bag. The defendant testified that tea contained tannic acid which would reduce bleeding.
Although the plaintiff's condition worsened overnight no further efforts were made to contact the defendant. The next morning, after contacting Dr. Hellman, her medical doctor, the plaintiff was taken to the hospital where she was diagnosed as suffering from fever, neutroperia, severe thrombocytopenia, severe anemia and myelofibrosis. She was admitted on June 20, 1990 and discharged on June 23, 1990 with no permanent injuries resulting from the incident.
The plaintiff's expert on standard of care was Dr. Stephen Sachs, D.D.S. of Lake Success, New York. Dr. Sachs testified in the form of a deposition on October 15, 1992 at his office. He stated that he reviewed the defendant's records, pretrial testimony of the defendant and Dr. Marks, an expert who testified on behalf of the defendant. He also reviewed deposition testimony of the plaintiff and also some records of prior admission of the plaintiff to the hospital. Dr. Sachs testified that in his opinion the defendant varied from prudent and standard practice. The significant variation in standard was the fact that the defendant did not pursue and obtain additional knowledge and consultation regarding this CT Page 10738 condition with the plaintiff's physician. The fact that the plaintiff indicated a low platelet count should have prompted a consultation with the plaintiff's physician so that together they could have managed the plaintiff's care. Dental extractions are very provocative to the the hemostatic mechanism and with the number of platelets that the plaintiff had and knowing that the plaintiff required an extraction, appropriate preparation of the plaintiff and management of the local wound, based on a consultation with the plaintiff's physician, should have been done prior to the performance of the extraction.
Dr. Sachs further testified that because the tooth was extracted without proper preparation the plaintiff had prolonged hemorrhaging which resulted in further platelet transfusions and hospitalization. If properly done the situation could have been managed as an outpatient and hospitalization would not have been required. The hospitalization was a direct result of the dental extraction.
The defendant had two experts testify on his behalf. The first expert was Dr. Alan Sclaroff of St. Louis, Mo. It was his opinion that the defendant did not deviate from the standard of care. This witness knew the defendant personally since he directed the defendant's training as a teaching professor. He testified that the extraction was a simple one and did not require prior consultation with the plaintiff's physician. His basic opinion was based partially on the reason that he was very familiar with the training that the defendant received and that the defendant is well educated. He further stated that the fever of the plaintiff was in fact, caused by other conditions of the plaintiff, i.e. an acute sinusitis which caused a rise in temperature. He also stated that the plaintiff contributed to her own condition by failing to take the penicillin prescription.
The second expert who testified on behalf of the defendant was Dr. Howard Marks of Hartford, Ct. It was his opinion that there was no deviation in the standard of care by the defendant. Quite surprisingly, Dr. Marks testified that in the one case he had of myelofibrosis he himself had consulted with a hemotologist prior to performing the extraction.
The court finds that the opinion of the plaintiff's expert carried more validity that that of the defendant's experts. CT Page 10739 The personal relationship of the defendant to Dr. Sclaroff and Dr. Marks' own admission that he himself had consulted with a physician prior to performing the extraction cast doubts upon their opinions.
For these reasons the court finds the plaintiff has sustained her burden of proof regarding the claim of malpractice.
Bills incurred by the plaintiff and introduced as evidence were the St. Francis Hospital bill of $4,912.19 and the bill of Radiology Associates of Hartford, P.C. for $122.27, totaling $5,034.46.
The defendant further contends that the plaintiff, herself, by failing to follow the defendant's instructions and by failing to administer the penicillin prescription was guilty of comparative negligence and is thus barred from recovery. The claim of the defendant is not an issue of comparative negligence but rather is an issue of the mitigation of damages. Preston v. Keith, 217 Conn. 12, 484 A.2d (1992). Based upon the testimony offered, the court finds that the plaintiff's failure to properly follow the defendant's instructions requires the court to consider the mitigation of damages. "To claim successfully that the plaintiff failed to mitigate damages the defendant must show that the injured party failed to take reasonable action to lessen the damages; that the damages were in fact enhanced by such failure; and that the damages which could have been avoided can be measured with reasonable certainty." Preston v. Keith, 217 Conn. 12, 22. Because the defendant has proven to the court's satisfaction that hospitalization could have been avoided the defendant has successfully proven the three requirements for consideration of mitigation of damages and in determining the final award the court has deducted the cost of the hospitalization in the amount of $5,034.46.
A review of the file indicates that the plaintiff has fully complied with regard to the good faith certificate required by52-190a. After mitigation of damages the court awards the plaintiff the sum of $14,965.54 plus costs.
HARRY N. JACKAWAY JUDGE, SUPERIOR COURT CT Page 10740